MEDO-LAND DAIRIES, a Montana Corporation, Plaintiff
and Respondent, v. MONTANA MILK CONTROL BOARD,
Defendant and Appellant.

No. 11960.
Submitted March 8, 1971.
Decided April 12, 1971.
483 P.2d 705.

Brazier & Dowling, Helena, Geoffrey L. Brazier (argued) Helena, for defendant-appellant.

Karl R. Karlberg (argued) Missoula, Boone, Karlberg & Haddon, Missoula, for plaintiff-respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the Fourth Judicial District, Missoula County, Honorable Jack L. Green, presiding without a jury, reversing a decision of the Montana Milk Control Board and in favor of Medo-Land Dairies, a Montana corporation, plaintiff and respondent.

The facts which led to a hearing before the Milk Control Board, the appeal to the district court, and this appeal, are agreed upon between the parties involved. The plaintiff, Medo-Land Dairies, is a licensed producer and a licensed distributor in the Missoula area. This dual relationship of producer-distributor is authorized by the Montana Milk Control Act, sections 27-401 through 27-429, R.C.M.1947.

Medo-Land, as a producer, owned a dairy farm in Ravalli County, together with equipment and cows. The milk produced on the dairy farm was processed and distributed out of Medo-Land's Missoula plant. As a distributor, it needed more milk than could be produced at its Ravalli County dairy so over a period of years it had purchased milk from other producers of the Ravalli County area.

This dairy farm was acquired by Medo-Land by leasing the buildings, equipment, machinery, fixtures and dairy herd from H. A. Searles and his wife, Patricia M. Searles. The Searles family hold the controlling stock in Medo-Land Dairies. The date of this acquisition was November 1, 1965.

The defendant and appellant herein, Montana Milk Control Board, hereinafter referred to as the Board, issued an official order #641-C, effective July 1, 1967, portions of which will be discussed herein.

Regulation 23(b) of official order #641-C sets up a "grandfather clause" authorizing all producer-distributors who had acquired a dairy farm prior to July 1, 1967, to continue to allocate milk produced on such farm to Class I usage; but required that the milk produced on any dairy farm acquired after that date by a producer-distributor be prorated along with the usage given all other producers.

In the fall of 1968, the Searles family, owners of the dairy farm, found it necessary to do some extensive financing on the farm. In order to obtain the necessary capital they sold their lessors' interest in 99 head of the livestock (approximately one-half of the herd) to Steven Petersen. This sale was accomplished on September 1, 1968. On the same date, Petersen entered into a written lease agreement with Medo-Land wherein he leased the cattle just purchased from the Searles back to Medo-Land. The lease was for a period of one year subject to automatic renewal unless either party gave a sixty day notice prior to the anniversary date of the lease—September 1.

Milk from the leased cattle was commingled in the distributor's processing plant with the milk of the other producers, but instead of being given a blended price as the other producers received, the milk was given premium Class I usage, whenever possible.

The history of Medo-Land's price dealings with its other producers revealed that prior to July 1, 1967 it purchased milk from producers on a "base" plan, whereby each producer was assigned a quota of its product for which he was paid Class I

(premium) price. This was changed on July 1, 1967 when the base price system was discontinued by Medo-Land and thereafter a pro rata basis or "proportionate use" basis was used.

After receiving queries from several of Medo-Land's producers about the continued preference given to the Petersen milk, the Board scheduled a hearing "to determine and define the nature and status of the business relationship, if any, existing between Medo-Land Dairies, a corporation and licensed producer, and one Steven Petersen, Stevensville, Montana." A formal hearing was held in Missoula in June 1969. On September 20, 1969, the Board issued its findings and conclusions wherein the Board declared the lease arrangement between Steven Petersen and Medo-Land Dairies to be an acquisition of a dairy within the rules and regulations of the Board and that the "grandfather clause" of its official order #641-C was not applicable. In addition the Board made its order retroactive to September 1, 1968, insofar as the application of Class I usage was concerned.

Medo-Land Dairies appealed the Board's decision to the district court of Missoula County. The Honorable Jack L. Green, sitting without a jury, hear the appeal and found for Medo-Land Dairies. The court found that the leasing of the farm and dairy herd was an acquisition of a dairy farm within the meaning of Regulation 23(b) of the Board's official order #641-C and the acquisition was prior to July 1, 1967. Further, that all milk produced under the lease arrangement with Petersen was entitled to the allocation of Class I usage by Medo-Land Dairies, and the order of the Board was illegal and void. From this judgment of the district court, the Board appeals.

We first direct our consideration to the pertinent portions of the Board's official order #641-C. This order became effective July 1, 1967, is statewide in scope and has been in full force and effect since its adoption. Several regulations promulgated by the official order #641-C are of particular significance to our consideration. Regulation 22 of such order provides:

"Each producer whose milk is pooled with milk from other

sources supplying a non-base or non-quota distributor shall be credited with a pro-rata share of the milk allocated to that distributors' Class I usage ＊ ＊ ＊."

Regulation 23(a) provides:

"For the purpose of producer pricing, no distributor will be permitted to allocate milk purchased from sources other than his regular producers to a higher use classification than the use classification allocated for his regular producers' milk."

Regulation 23(b) provides:

"Any distributor who acquires a dairy farm after the effective date of this order with intent to supply a portion of its plant's milk requirements will thereafter be accorded by the Board's auditors the same share of the plant's usage as all other producers supplying the distributor."

While all three regulations are of import in the protection of the producer, regulations 22 and 23(a) apply only if we find the trial court erred in its holding that there was not a new "acquisition" within the meaning of regulation 23(b). Under the facts hereinbefore set forth, we find no error in the trial court's finding that there was a continuity of operation and intent from the original purchase by the Searles family in 1965 through the purchase-lease agreement with Petersen.

As noted in respondent's brief, the confusion in the case arises from the Board's effort to have the case narrowly determined upon who has "title" to the cows. This argument fails for several reasons. Factually Petersen purchased but one-half of the cattle (99) and the rest remained as before, owned by the Searles family and leased to Medo-Land for production. How the milk produced by these cows could have been segregated by the auditors for Class I use and price was not determined. However, more important to the law of the case, title is a bundle of rights, one of which is the right of possession. This is recognized by our statutes. Section 67-303, R.C.M.1947, provides:

"The ownership of property is either:

"1.  Absolute; or

"2.  Qualified."

Section 67-305, R.C.M.1947, provides:

"The ownership of property is qualified:

"* * *

"2. When the time of enjoyment is deferred or limited."

Thus, under the statutes, respondent Medo-Land Dairies did, to the extent of the lease agreement, continue to own the livestock, with that title remaining in Medo-Land. As long as the operation of the dairy farm was uninterrupted and not abandoned, there can be no new "acquisition" under regulation 23(b) of the Board's official order # 641-C.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, DALY, and CASTLES, concur.